UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| **GORDON MAILLET, individually and on behalf of all others similarly situated,** | § § § | **CASE NO: 4:20-cv-00028** |
| **Plaintiffs,** | § § § | |
| **v.** | § § § | **JURY TRIAL DEMANDED** |
| **CENTENNIAL RESOURCE DEVELOPMENT, INC.,** | § § § § | **COLLECTIVE ACTION** |
| **Defendant.** | § | **PURSUANT TO 29 U.S.C. § 216(b)** |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

### SUMMARY

1.      Plaintiff Gordon Maillet (Maillet) brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA) against Defendant Centennial Resource Development, Inc. (Centennial).

2.      Maillet and the other workers like him regularly worked for Centennial in excess of 40 hours each week.

3.      But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4.      Instead of paying overtime as required by the FLSA, Centennial paid these workers a daily rate with no overtime pay. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial

portion of the events giving rise to this action occurred in this District.

7.     Maillet worked for Centennial in this District in Reeves County, Texas.

## THE PARTIES

8.     Maillet performed work for Centennial as a Mud Engineer from approximately July 2016 until January 2019. From approximately January 2018 until January 2019, he was paid a day-rate with no overtime compensation. His consent to be a party plaintiff is attached as **Exhibit A**.

9.     Maillet brings this action on behalf of himself and all other similarly situated workers paid by Centennial's day-rate system. Centennial paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA. The FLSA class of similarly situated workers consists of:

> **Current and former oilfield workers employed by or performing work on behalf of Centennial Resource Development, Inc. and paid a day-rate without overtime during the past three years** (the "Day Rate Workers").

10.     Centennial is a Colorado corporation and may be served with process by serving its registered agent: Cogency Global Inc., 1601 Elm St., Suite 4360, Dallas, TX 75201.

## COVERAGE UNDER THE FLSA

11.     For at least the past three years, Centennial has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

12.     For at least the past three years, Centennial has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

13.     For at least the past three years, Centennial has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said

enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

14.     For at least the past three years, Maillet and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

15.     Centennial treated Maillet (and indeed all its oilfield workers that it classified as independent contractors as employees and uniformly dictated the pay practices to which Maillet and its other employees (including its so-called "independent contractors") were subjected.

16.     Centennial's misclassification of Maillet as an independent contractor does not alter its status as an employer for purposes of this FLSA collective action.

## FACTS

17.     Centennial Resource Development, Inc. is an oil and natural gas company focused on the development of unconventional oil and associated liquids-rich natural gas reserves in the Permian Basin.

18.     To complete its business objectives, Centennial hires personnel to perform the necessary work. Over the past three years, Centennial employed dozens of individuals – including Maillet – as Rig Clerks, Completions Supervisors, Completions Superintendents, Mud Engineers and Drilling Supervisors (or similar positions) in several states.

19.     While exact job titles and job duties may differ, these workers are subjected to the same or similar illegal pay practices for similar work. Specifically, Centennial paid these workers a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

20.     For example, Maillet worked for Centennial starting in approximately July 2016 through January 2019 as a Mud Engineer in Pecos, Texas. From approximately January 2018 until January 2019, he was paid on a day-rate basis.

21.     As a Mud Engineer, Maillet's primary job duties included monitoring drilling fluids activities at jobsites, operating oilfield equipment, coordinating transfer of fluids between rigs, controlling drilling fluids within defined specifications, and building and maintaining various fluid systems associated with the drilling and completion of wells, as needed. Maillet worked well in excess of 40 hours each week while employed by Centennial.

22.     The work Maillet performed was an essential part of Centennial's core business.

23.     During Maillet's employment with Centennial while he was classified as an independent contractor, Centennial exercised control over all aspects of his job. Centennial did not require any substantial investment by Maillet for him to perform the work required of him.

24.     Centennial paid Maillet through various staffing companies throughout his tenure.

25.     Centennial determined Maillet's opportunity for profit and loss.

26.     Indeed, Centennial controlled all the significant or meaningful aspects of the job duties performed by Maillet.

27.     Centennial ordered the hours and locations Maillet worked, tools used, and rates of pay received.

28.     Centennial controlled all aspects of Maillet's job activities by enforcing mandatory compliance with Centennial's policies and procedures.

29.     No real investment was required of Maillet to perform his job. More often than not, Maillet utilized equipment provided by Centennial to perform his job duties.

30.     These workers carry out the hands-on, day-to-day production work of Centennial.

31.     Maillet did not provide the equipment he worked with on a daily basis.

4

32.     Centennial made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Maillet worked.

33.     Maillet did not incur operating expenses like rent, payroll and marketing.

34.     Maillet was economically dependent on Centennial during his employment.

35.     Centennial set Maillet's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Centennial.

36.     Centennial directly determined Maillet's opportunity for profit and loss. Maillet's earning opportunity was based on the number of days Centennial scheduled him to work.

37.     Very little skill, training, or initiative was required of Maillet to perform his job duties.

38.     Indeed, the daily and weekly activities of the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created by Centennial.

39.     Virtually every job function was pre-determined by Centennial, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

40.     The Day Rate Workers were prohibited from varying their job duties outside of the pre-determined parameters. Moreover, the job functions of the Day Rate Workers were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

41.     The Day Rate Workers did not have any supervisory or management duties.

42.     For the purposes of an FLSA overtime claim, the Day Rate Workers performed substantially similar job duties related to servicing oil and gas operations in the field.

43.     Maillet performed routine manual and technical labor duties that were largely dictated by Centennial.

44.     Maillet was not employed by Centennial on a project-by-project basis.

45.     In fact, while Maillet was classified as an independent contractor, he was regularly on call for Centennial and was expected to drop everything and work whenever needed.

46.     The Day Rate Workers also worked similar hours and were denied overtime as a result of the same illegal pay practice. The Day Rate Workers all worked in excess of 40 hours each week and were often scheduled for 12-hour shifts for weeks at a time. Instead of paying them overtime, Centennial paid the Day Rate Workers a day-rate. Centennial denied the Day Rate Workers overtime for any hours worked in excess of 40 hours in a single workweek.

47.     Centennial's policy of failing to pay its independent contractors, including Maillet, overtime violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

48.     It is undisputed that the contractors are maintaining and working with oilfield machinery, performing manual labor, and working long hours out in the field.

49.     Because Maillet (and Centennial's other independent contractors) was misclassified as an independent contractor by Centennial, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

50.     Despite knowing the FLSA's requirements, Centennial failed to pay Maillet and the Day Rate Workers overtime for hours worked in excess of 40 hours in a single workweek.

## FLSA VIOLATIONS

51.     Maillet incorporates the preceding paragraphs by reference.

52.     As set forth herein, Centennial violated the FLSA by failing to pay Maillet and the Class Members overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

53.     Centennial knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Workers overtime compensation. Centennial's failure to pay

overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

54. Accordingly, Maillet and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

## COLLECTIVE ACTION ALLEGATIONS

55. Maillet incorporates all previous paragraphs and alleges that the illegal pay practices Centennial imposed on them were likewise imposed on the members of the class.

56. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

57. Numerous other individuals who worked with Maillet indicated they were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

58. Based on his experiences and tenure with Centennial, Maillet is aware that Centennial's illegal practices were imposed on the members of the class.

59. Centennial used day rate contractors across the United States.

60. The members of the class were all improperly classified as contractors and not afforded overtime compensation when they worked in excess of forty 40 hours per week.

61. Centennial is the true employer of Maillet and the Day Rate Workers.

62. Centennial's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of the class.

63. Maillet's experiences are therefore typical of the experiences of the members of the class.

64.     The specific job titles or precise job locations of the various members of the class do not prevent class or collective treatment.

65.     Maillet has no interests contrary to, or in conflict with, the members of the class. Like each member of the class, Maillet has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

66.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

67.     Absent this action, many members of the class likely will not obtain redress of their injuries and Centennial will reap the unjust benefits of violating the FLSA.

68.     Furthermore, even if some of the members of the class could afford individual litigation against Centennial, it would be unduly burdensome to the judicial system.

69.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

70.     The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

(a)     Whether Centennial employed the members of the class within the meaning of the FLSA;

(b)     Whether the members of the class were improperly misclassified as exempt;

(c)     Whether Centennial's decision to classify the members of the class as exempt was made in good faith;

(d)     Whether Centennial's decision to not pay time and a half for overtime to the members of the class was made in good faith;

(e)     Whether Centennial's violations of the FLSA was willful; and

(f)     Whether Centennial's illegal pay practices were applied uniformly across the nation to all members of the class.

71.     Maillet's claims are typical of the claims of the members of the class. Plaintiffs and the members of the class sustained damages arising out of Centennial's illegal and uniform employment policy.

72.     Maillet knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a collective action.

73.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

### JURY DEMAND

74.     Maillet demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Plaintiffs pray for judgment against Centennial as follows:

(a)     For an order allowing this action to proceed as a FLSA collective action and directing notice to the class;

(b)     For an order pursuant to section 16(b) of the FLSA finding Centennial liable for unpaid back wages, and an equal amount of liquidated damages, due to Maillet and the class members;

(c)     For an order awarding Maillet and the class members the costs of this action;

(d)     For an order awarding Maillet and the class members their attorneys' fees;

(e)     For an order awarding Maillet and the class members unpaid benefits and compensation in connection with the FLSA violations;

(f)     For an order awarding Maillet and the class members pre- and post-judgment interest at the highest rates allowed by law; and

(g)     For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
    Michael A. Josephson
    Texas Bar No. 24014780
    Andrew W. Dunlap
    Texas Bar No. 24078444
    Carl A. Fitz
    Texas Bar No. 24056278
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77005
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    cfitz@mybackwages.com

    **AND**

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**